FISH UNLIMITED ET AL. *v.* NORTHEAST
UTILITIES SERVICE COMPANY ET AL.
(SC 16268)

Borden, Norcott, Katz, Palmer and Blue, Js.

Argued May 23—officially released August 1, 2000

*Nancy Burton,* for the appellants (plaintiffs).

*Elizabeth C. Barton,* with whom were *Harold M. Blinderman* and, on the brief, *Donald C. Mahoney,* for the appellees (defendants).

### Opinion

KATZ, J. The dispositive issue in this appeal is whether the plaintiffs[1] have standing under General

---

[1] The plaintiffs in this case are Fish Unlimited, a national clean water fisheries conservation organization based in Shelter Island, New York, with a satellite office in Waterford, Connecticut, the environmental groups, Don't Waste Connecticut based in New Haven, Connecticut, STAR Foundation, based in East Hampton, New York, and North Fork Environmental Council,

Statutes § 22a-16[2] to bring this action in Superior Court against the defendants,[3] seeking: (1) an injunction to prevent the operation of Millstone Nuclear Power Generating Station (Millstone); and (2) a declaratory judgment that the discharge permit, issued to the defendants by the department of environmental protection (department) pursuant to the federal Clean Water Act, is invalid.[4] The trial court rendered judgment dismissing

Inc., based in Mattituck, New York; Fred Thiele, a New York State assemblyman, of Sag Harbor, New York; Green Party of Connecticut; town of East Hampton, New York; and Coalition Against Millstone, an organization located on Long Island advocating the permanent closure of the Millstone Nuclear Generating Station.

[2] General Statutes § 22a-16 provides: "Action for declaratory and equitable relief against unreasonable pollution. The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

[3] The named defendant, Northeast Utilities Service Company, owns and operates three nuclear generating units that comprise the Millstone Nuclear Power Generating Station in Waterford, hereinafter referred to as unit 1, unit 2 and unit 3. Northeast Utilities Service Company is the parent corporation of the second defendant in this case, Northeast Nuclear Energy Company, which is involved in the management and operation of units 1, 2 and 3.

[4] The federal Clean Water Act; 33 U.S.C. § 1342; and General Statutes § 22a-430, require any person or municipality to obtain a permit prior to discharging any substance into the waters of the United States or Connecticut. In Connecticut, the department is responsible for issuing both federal and state discharge permits. Permits for discharges to surface waters are known as National Pollution Discharge Elimination System (NPDES) permits.

the complaint, having concluded that the plaintiffs lacked standing under § 22a-16 to bring this action directly in the Superior Court, and that the plaintiffs failed to exhaust their administrative remedies before the department.[5] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c). We affirm the trial court's judgment dismissing the complaint.

The following facts are pertinent to this appeal. Millstone is made up of three nuclear power units. Each unit is equipped with a "once-through condenser cooling system" that draws large volumes of seawater from Niantic Bay into the units. This water is used to cool the units and is later discharged into Long Island Sound.

Pursuant to the federal Clean Water Act; see footnote 4 of this opinion; no person or municipality may initiate a discharge into the waters of the United States without first obtaining a National Pollution Discharge Elimination System (NPDES) permit. The department issues these permits pursuant to General Statutes § 22a-430[6]

---

[5] The trial court rejected the defendants' claims that the plaintiffs' action was barred by the doctrine of res judicata and by the prior pending action doctrine.

[6] General Statutes § 22a-430 provides in pertinent part: "Permit for new discharge. Regulations. Renewal. Special category permits or approvals. Limited delegation. General permits. (a) No person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner. Any person who initiated, created or originated a discharge prior to May 1, 1967, and any municipality which initiated, created or originated a discharge prior to April 10, 1973, for which a permit has not been issued pursuant to this section, shall submit an application for a permit for such discharge on or before July 1, 1987. Application for a permit shall be on a form prescribed by the commissioner, shall include such information as the commissioner may require and shall be accompanied by a fee of twenty-five per cent more than the amount established in regulations in effect on July 1, 1990. On and after July 1, 1991, such fees shall be as prescribed by regulations adopted by the commissioner in accordance with chapter 54. The commissioner shall not issue or renew a permit unless

## et seq. and has issued such permits in the past to the

such issuance or renewal is consistent with the provisions of the federal Clean Water Act (33 USC 1251 et seq.).

"(b) The commissioner, at least thirty days before approving or denying a permit application for a discharge, shall publish once in a newspaper having a substantial circulation in the affected area notice of (1) the name of the applicant; (2) the location, volume, frequency and nature of the discharge; (3) the tentative decision on the application, and (4) additional information the commissioner deems necessary to comply with the federal Clean Water Act (33 USC 1251 et seq.). There shall be a comment period following the public notice during which period interested persons and municipalities may submit written comments. After the comment period, the commissioner shall make a final determination either that (A) such discharge would not cause pollution of any of the waters of the state, in which case he shall issue a permit for such discharge, or (B) after giving due regard to any proposed system to treat the discharge, that such discharge would cause pollution of any of the waters of the state, in which case he shall deny the application and notify the applicant of such denial and the reasons therefor, or (C) the proposed system to treat such discharge will protect the waters of the state from pollution, in which case he shall, except as provided pursuant to subsection (j) of this section, require the applicant to submit plans and specifications and such other information as he may require and shall impose such additional conditions as may be required to protect such water, and if the commissioner finds that the proposed system to treat the discharge, as described by the plans and specifications or such other information as may be required by the commissioner pursuant to subsection (j) of this section, will protect the waters of the state from pollution, he shall notify the applicant of his approval and, when such applicant has installed such system, in full compliance with the approval thereof, the commissioner shall issue a permit for such discharge, or (D) the proposed system to treat such discharge, as described by the plans and specifications, will not protect the waters of the state, in which case he shall promptly notify the applicant that its application is denied and the reasons therefor. The commissioner shall, by regulations adopted in accordance with the provisions of chapter 54, establish procedures, criteria and standards as appropriate for determining if (i) a discharge would cause pollution to the waters of the state and (ii) a treatment system is adequate to protect the waters of the state from pollution. Such procedures, criteria and standards may include schedules of activities, prohibitions of practices, operating and maintenance procedures, management practices and other measures to prevent or reduce pollution of the waters of the state, provided the commissioner in adopting such procedures, criteria and standards shall consider best management practices. The regulations shall specify the circumstances under which procedures, criteria and standards for activities other than treatment will be required. For the purposes of this section, 'best management practices' means those practices which reduce the discharge

## defendants, thereby authorizing the discharge of water that is required for the operation of Millstone.

of waste into the waters of the state and which have been determined by the commissioner to be acceptable based on, but not limited to, technical, economic and institutional feasibility. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application has not been given a public hearing shall have the right to a hearing and an appeal therefrom in the same manner as provided in sections 22a-436 and 22a-437. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application has been given a public hearing shall have the right to appeal as provided in section 22a-437. The commissioner may, by regulation, exempt certain categories, types or sizes of discharge from the requirement for notice prior to approving or denying the application if such category, type or size of discharge is not likely to cause substantial pollution. The commissioner may hold a public hearing prior to approving or denying any application if in his discretion the public interest will be best served thereby, and he shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. Notice of such hearing shall be published at least thirty days before the hearing in a newspaper having a substantial circulation in the area affected.

"(c) The permits issued pursuant to this section shall be for a period not to exceed five years, except that any such permit shall be subject to the provisions of section 22a-431. Such permits: (1) Shall specify the manner, nature and volume of discharge; (2) shall require proper operation and maintenance of any pollution abatement facility required by such permit; (3) may be renewable for periods not to exceed five years each in accordance with procedures and requirements established by the commissioner; and (4) shall be subject to such other requirements and restrictions as the commissioner deems necessary to comply fully with the purposes of this chapter, the federal Water Pollution Control Act and the federal Safe Drinking Water Act. An application for a renewal of a permit which expires after January 1, 1985, shall be filed with the commissioner at least one hundred eighty days before the expiration of such permit. The commissioner, at least thirty days before approving or denying an application for renewal of a permit, shall publish once in a newspaper having substantial circulation in the area affected, notice of (A) the name of the applicant; (B) the location, volume, frequency and nature of the discharge; (C) the tentative decision on the application, and (D) such additional information the commissioner deems necessary to comply with the federal Clean Water Act (33 USC 1251 et seq.). There shall be a comment period following the public notice during which period interested persons and municipalities may submit written comments. After the comment period, the commissioner shall make a final determination that (i) continuance of the existing discharge would not cause

The defendants' most recent NPDES permit was issued by the department on December 14, 1992, for a

pollution of the waters of the state, in which case he shall renew the permit for such discharge, or (ii) continuance of the existing system to treat the discharge would protect the waters of the state from pollution, in which case he shall renew a permit for such discharge, (iii) the continuance of the existing system to treat the discharge, even with modifications, would not protect the waters of the state from pollution, in which case he shall promptly notify the applicant that its application is denied and the reasons therefor, or (iv) modification of the existing system or installation of a new system would protect the waters of the state from pollution, in which case he shall renew the permit for such discharge. Such renewed permit may include a schedule for the completion of the modification or installation to allow additional time for compliance with the final effluent limitations in the renewed permit provided (I) continuance of the activity producing the discharge is in the public interest; (II) the interim effluent limitations in the renewed permit are no less stringent than the effluent limitations in the previous permit; and (III) the schedule would not be inconsistent with the federal Water Pollution Control Act. No permit shall be renewed unless the commissioner determines that the treatment system adequately protects the waters of the state from pollution. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application for a renewal has not been given a public hearing shall have the right to a hearing and an appeal therefrom in the same manner as provided in sections 22a-436 and 22a-437. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application for a renewal has been given a public hearing shall have the right to appeal as provided in section 22a-437. Any category, type or size of discharge that is exempt from the requirement of notice pursuant to subsection (b) of this section for the approval or denial of a permit shall be exempt from notice for approval or denial of a renewal of such permit. The commissioner may hold a public hearing prior to approving or denying an application for a renewal if in his discretion the public interest will be best served thereby, and he shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. Notice of such hearing shall be published at least thirty days before the hearing in a newspaper having a substantial circulation in the area affected.

"(d) If the commissioner finds that any person or municipality has initiated, created or originated or is maintaining any discharge into the waters of the state without a permit as required in subsection (a) hereof, or in violation of such a permit, he may issue an order to abate pollution which shall include a time schedule for the accomplishment of the necessary steps leading to the abatement of such pollution, or notwithstanding any request for a hearing pursuant to section 22a-436 or the pendency of an appeal

maximum term of five years.[7] The five year term was due to expire on December 13, 1997. Prior to that date, however, the defendants submitted a timely renewal application pursuant to § 22a-430 (c). That application is still pending. Accordingly, pursuant to General Statutes § 4-182 (b),[8] the defendants' 1992 permit will remain in effect until the renewal application has been finally resolved by the department.

On June 2, 1999, the plaintiffs brought the present action in the trial court, alleging that water intakes and discharges at Millstone were causing unreasonable pollution, impairment and destruction of the air, water and other natural resources of the state within the meaning of § 22a-16. They also alleged that, although the defendants had timely applied to renew their 1992 NPDES permit, their application was legally deficient. Specifically, the plaintiffs claimed that, in their renewal application, the defendants had represented that they

therefrom, he may request the Attorney General to bring an action in the superior court for the judicial district of Hartford to enjoin such discharge by such person or municipality until the person or municipality has received a permit from the commissioner or has complied with a permit which the commissioner has issued pursuant to this section. Any such action brought by the Attorney General shall have precedence in the order of trial as provided in section 52-191. . . ."

We are aware that subsequent to the filing of the renewal application in this case, Public Acts 1998, No. 98-209, § 1, amended § 22a-430 (b) and (c). The changes were technical in nature and are not relevant to this case. Because the application is still pending, references herein are to the current revision of the statute.

[7] Pursuant to § 22a-430 (c), permits may not be issued for a period exceeding five years. See footnote 6 of this opinion.

[8] General Statutes § 4-182 provides in relevant part: "Matters involving licenses. . . .

"(b) When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court. . . ."

had "sought a permit to generate electricity" at Millstone, but that Millstone was not in fact producing electricity at the time of the renewal application. Therefore, according to the plaintiffs, the defendants were not engaged in an activity of a "continuing nature" that, pursuant to § 4-182 (b), would, in effect, save the 1992 permit from otherwise expiring.[9] Consequently, the plaintiffs contended that the defendants had been discharging water from Millstone without a valid permit. In addition, the plaintiffs claimed that the defendants had acted in bad faith in their efforts to renew the permit. Finally, the plaintiffs alleged that the defendants and the department together had acted in bad faith and in collusion, which caused the public trust in the air, water and other natural resources of the state to be undermined, leaving the plaintiffs essentially with no adequate remedy at law. Consequently, according to the plaintiffs, they were "forced" to seek a temporary and permanent injunction against the operation of Millstone and a declaratory judgment that Millstone was operating without a valid NPDES permit.

The defendants moved to dismiss the complaint on the grounds that: (1) the plaintiffs lacked standing; (2) the plaintiffs had failed to exhaust their administrative remedies; (3) the plaintiffs' claims were barred by the doctrine of res judicata; and (4) the plaintiffs' claims were barred by the prior pending action doctrine. The trial court, *Hon. Robert J. Hale*, judge trial referee, dismissed the complaint on the grounds that the plaintiffs lacked standing to bring this action directly in the Superior Court under § 22a-16, and that they had failed to exhaust their administrative remedies. In addition, the trial court noted that, if the plaintiffs had proven collusion between the defendants and the department, they might have established an exception to the exhaustion requirement. The trial court concluded, however,

[9] See footnote 8 of this opinion.

that the plaintiffs had failed to prove collusion, and thus, were not entitled to the exception. The plaintiffs appealed from the judgment of dismissal. We agree with the trial court's conclusion that the plaintiffs lacked standing to bring this action directly in the Superior Court and, therefore, we affirm its judgment.[10]

The plaintiffs contend that they have standing pursuant to § 22a-16 to bring this action directly in the Superior Court. The defendants, however, claim that, pursuant to General Statutes § 22a-19 (a), this action must be brought by way of intervention in the permit renewal proceedings[11] and, therefore, the trial court properly concluded that the plaintiffs lacked standing.[12]

---

[10] In light of the conclusion that the plaintiffs lacked standing to bring their claim directly in the Superior Court, we do not reach the issue of exhaustion of administrative remedies.

[11] The named plaintiff, Fish Unlimited, already has intervened in the defendants' permit renewal application before the department pursuant to General Statutes § 22a-19, which provides: "Administrative proceedings. (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[12] The defendants assert as alternative grounds for affirmance that the plaintiffs claims are barred by: (1) the doctrine of res judicata; and (2) the prior pending action doctrine. In light of our conclusion reached herein, that the trial court properly dismissed the plaintiffs' complaint for lack of standing, we do not reach the merits of the alternative arguments made by the defendants.

The issue of standing implicates this court's subject matter jurisdiction. *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 595, 473 A.2d 787 (1984). Traditionally, citizens seeking to protect the environment were required to show specific, personal aggrievement to attain standing to bring a legal action. See *Sheridan* v. *Planning Board*, 159 Conn. 1, 13, 266 A.2d 396 (1969). The Connecticut Environmental Protection Act; General Statutes § 22a-1 et seq.; however, waives the aggrievement requirement in two circumstances. First, any private party, including a municipality, without first having to establish aggrievement, may seek injunctive relief in court "for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." General Statutes § 22a-16. Second, any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging "conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes § 22a-19 (a).

Although § 22a-16 abrogates the aggrievement requirement for bringing an action directly in the Superior Court, our case law explains the limitations of § 22a-16, and elaborates why the plaintiffs must pursue their claim by intervening in an administrative hearing before the department pursuant to § 22a-19. In *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 595, the plaintiffs brought an action under § 22a-16 to enjoin a utility company and its parent company from burning certain oils containing hazardous materials without first obtaining permits from the department, including a wastewater discharge permit pursuant to § 22a-430, the same section under which the defendants in the present case have sought a renewal of their permit. The trial

court dismissed the action because the plaintiffs lacked standing to enforce the statutory environmental permitting scheme. We agreed. Id. Citing to *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984), wherein this court held that § 22a-19 "must be read in connection with the legislation which defines the authority of the particular administrative agency," the court in *Middletown* concluded that the plaintiffs lacked standing to challenge the defendants' failure to obtain the necessary permits pursuant to, inter alia, § 22a-430. *Middletown* v. *Hartford Electric Light Co.,* supra, 597. Only in the absence of an appropriate administrative body may an independent action pursuant to § 22a-16 be brought. Id. Because the permitting statutes at issue, including § 22a-430, conferred extensive authority over permitting issues on the department, the court concluded that § 22a-16 did not provide the plaintiffs with standing to challenge the defendant's failure to obtain a permit under any statute other than the Environmental Protection Act itself. Id.

In the present case, the plaintiffs seek to use § 22a-16 to afford standing to raise permitting claims governed by § 22a-430. The department, however, has statutory and regulatory authority to issue water discharge permits,[13] to determine the completeness of renewal applications[14]

---

[13] See General Statutes § 22a-430, the text of which is set forth in footnote 6 of this opinion.

[14] See General Statutes §§ 22a-430 (c) and 4-182 (b), the text of which is set forth in footnotes 6 and 8 of this opinion, respectively; and § 22a-430-4 of the Regulations of Connecticut State Agencies, entitled "Procedures and criteria for issuing water discharge permits," which provides in relevant part: "(d) Preliminary review. . . .

"(2) (A) Notwithstanding the provisions of section 22a-3a-1 of the Regulations of Connecticut State Agencies, the commissioner shall determine if an application for renewal is timely and sufficient in accordance with this subsection. If the application for renewal is untimely or insufficient, the commissioner shall send written notice to the applicant within one hundred twenty (120) days of receipt of the application and state the reasons therefor.

"(B) A determination that an application for renewal is untimely shall be a final decision and shall cause the existing permit to expire on its original expiration date. If the commissioner determines that an application is timely

## and to pursue any one of several remedies if it concludes that a discharge is creating unreasonable pollution[15] or

but insufficient, the applicant shall be allowed ninety days from the issuance of the notice of insufficiency to submit the information specified in the notice. If during the review of such information the commissioner determines that additional information is necessary, he or she shall send notice to the applicant stating the reasons for the determination and the applicant shall be allowed an additional ninety days from the issuance of such notice to submit the information specified in the notice. If the applicant fails to submit the information specified in any notice of insufficiency within ninety days of issuance of such notice, the determination of insufficiency shall, at that time, become a final decision and the existing permit shall expire either upon its original expiration date or at the end of the ninety day period, whichever is later. If the applicant submits all necessary information in accordance with this subsection, the existing permit shall not expire until the end of the time period specified by section 4-182 (b) of the Connecticut General Statutes, as amended. . . ."

[15] See, e.g., General Statutes §§ 22a-7 (a), 22a-431, and 22a-432.

General Statutes § 22a-7 provides in relevant part: "Cease and desist orders. Service. Hearings. Injunctions. (a) The commissioner, whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment, will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 441, 442, 445, 446a, 446c, 446d, 446j and 446k, or whenever he finds after investigation that there is a violation of the terms and conditions of a permit issued by him that is in his judgment substantial and continuous and it appears prejudicial to the interests of the people of the state to delay action until an opportunity for a hearing can be provided, or whenever he finds after investigation that any person is conducting, has conducted, or is about to conduct an activity which will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 441, 442, 445, 446a, 446c, 446d, 446j and 446k for which a license, as defined in section 4-166, is required under the provisions of chapter 440, 441, 442, 445, 446a, 446c, 446d, 446j or 446k without obtaining such license, may, without prior hearing, issue a cease and desist order in writing to such person to discontinue, abate or alleviate such condition or activity. . . ."

General Statutes § 22a-431 provides: "Periodic investigation of discharges. Order to abate or submit information. The commissioner shall periodically investigate and review those sources of discharge which are operating pursuant to any order, permit, directive, registration or decision issued by the water resources commission or the commissioner before or after May 1, 1967, and, if he determines that there has been any substantial change in the manner, nature or volume of such discharge which will cause or threaten

is occurring without a valid permit.[16] The plaintiffs, in the present case, cannot use § 22a-16 as an "open sesame" to litigate environmental issues that are governed by § 22a-430, and which clearly have been placed within the exclusive domain of the department. *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 597. Thus, we conclude that the plaintiffs lack standing to bring this action pursuant to § 22a-16.

The judgment is affirmed.

In this opinion the other justices concurred.

pollution to any of the waters of the state, or if he finds that the system treating such discharge, or the operation thereof, no longer insures or adequately protects against pollution of the waters of the state, the commissioner may issue an order to abate such pollution to such person or municipality. Such order shall include a time schedule for the accomplishment of the necessary steps leading to the abatement of the pollution. The commissioner may issue an order to the person or municipality responsible for such source of discharge requiring submission to him of information that he deems necessary describing the manner, nature and volume of such discharge."

General Statutes § 22a-432 provides: "Order to correct potential sources of pollution. If the commissioner finds that any person has established a facility or created a condition before or after June 25, 1985, or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution. Any person who receives an order pursuant to this section shall have the right to a hearing and an appeal in the same manner as is provided in sections 22a-436 and 22a-437. If the commissioner finds that the recipient of any such order fails to comply therewith, he may request the Attorney General to bring an action in the superior court for the judicial district of Hartford to enjoin such person from maintaining such potential source of pollution to the waters of the state or to take the necessary steps to correct such potential source of pollution. All actions brought by the Attorney General pursuant to the provisions of this section shall have precedence in the order of trial as provided in section 52-191. An innocent landowner, as defined in section 22a-452d, shall not be held liable, except through imposition of a lien against the contaminated real estate under section 22a-452a, for any order issued under this section on or before August 1, 1990, which order is subject to appeal as of July 6, 1995, and, after July 1, 1996, for any order issued under this section after July 1, 1996."

[16] See General Statutes § 22a-430 (d), the text of which is set forth in footnote 6 of this opinion.