AVALONBAY COMMUNITIES, INC. *v.* ZONING
COMMISSION OF THE TOWN OF STRATFORD
(AC 24507)

AVALONBAY COMMUNITIES, INC. *v.* INLAND
WETLANDS AND WATERCOURSES AGENCY
OF THE TOWN OF STRATFORD
(AC 24508)

Lavery, C. J., and Dranginis and Berdon, Js.

Argued September 20, 2004—officially released February 22, 2005

*Joel H. Thompson*, with whom was *Kevin C. Kelly*, town attorney, for the appellant (proposed intervenor in both cases).

*Amy E. Souchuns*, with whom was *Timothy S. Hollister*, for the appellee (plaintiff in both cases).

*Timothy D. Bates*, for the appellee (defendant in the first case).

*Brian M. Stone*, for the appellee (defendant in the second case).

*Opinion*

LAVERY, C. J. These appeals involve the interplay between several statutes with differing and, to some

degree, divergent goals. The primary question presented is whether the citizen intervention provision of Connecticut's Environmental Protection Act of 1971 (EPA), General Statutes §§ 22a-14 to 22a-20, may be invoked by a town's legislative body in the context of judicial review of the denial of applications to secure approval to construct low and moderate income housing as contemplated by Connecticut's affordable housing statute, when a possible effect of that invocation is to interfere with the town's delegation of powers to its zoning commission and inland wetlands and watercourses agency under General Statutes § 8-1 et seq. and the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45, respectively. We answer that question in the affirmative and, accordingly, reverse the judgments of the trial court.

The plaintiff in both of these matters, AvalonBay Communities, Inc., sought to construct an apartment complex in the town of Stratford. One fourth of the units in the complex were to be set aside for low and moderate income housing in accordance with Connecticut's affordable housing statute, General Statutes § 8-30g.[1] To that end, the plaintiff applied to the defendant zoning commission of the town of Stratford (zoning commission) for an amendment to the zoning regulations,[2] a zone change for the proposed development

---

[1] General Statutes § 8-30g defines a set-aside development as one in which a portion of the dwelling units "will be conveyed by deeds containing covenants or restrictions which shall require that, for at least forty years after the initial occupation of the proposed development, such dwelling units shall be sold or rented at, or below, prices which will preserve the units as housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to eighty per cent of the median income. . . ." General Statutes § 8-30g (a) (6). A subset of the units so set aside "shall be sold or rented to persons and families whose income is less than or equal to sixty per cent of the median income . . . ." General Statutes § 8-30g (a) (6).

[2] The plaintiff requested the creation of a new "mixed income housing development" zone.

site[3] and approval of a site development plan. Because the proposed development site included a brook and adjacent wetlands, the plaintiff also applied to the defendant inland wetlands and watercourses agency of the town of Stratford (wetlands agency) for a permit to conduct a regulated activity.[4] The zoning commission and the wetlands agency denied the plaintiff's applications, both initially and after the applications had been revised.[5]

The plaintiff thereafter appealed from each entity's decision to the Superior Court. In the appeal from the zoning commission's decision, AC 24507, only the zoning commission was named as a defendant; in the appeal from the wetlands agency's decision, AC 24508, only the wetlands agency was named as a defendant. After the appeals had been pending for more than one year, settlements appeared imminent. At that time, the town of Stratford through its legislative body, the town council (town), filed in each case a verified pleading pursuant to General Statutes § 22a-19 (a), the citizen intervention provision of the EPA, claiming, in essence, that the plaintiff's proposed development would have a negative impact on the environment. The plaintiff filed motions to strike those pleadings, and the court, in separate memoranda of decision filed May 9, 2003, granted the plaintiff's motions.

In the case involving the zoning commission, the court, relying on § 8-1 et seq. and decisions interpreting those statutes, concluded that the town's intervention pleading "must be stricken because the town council

---

[3] The plaintiff sought to have the proposed development site reclassified as a mixed income housing development zone.

[4] Alternatively, the plaintiff sought from the wetlands agency a determination that no permit was necessary.

[5] General Statutes 8-30g (h) allows for resubmission of an affordable housing application with modifications following an initial denial by a commission.

is seeking to interfere in a matter committed exclusively to the [zoning] commission and, therefore, is not entitled to the relief it seeks, viz., to become a party to the appeal." In the case involving the wetlands agency, the court held similarly, analogizing to cases concerning zoning commissions.[6] The court did not analyze the scope or effect of § 22a-19 in either decision, but mentioned it only in passing as the authority pursuant to which the town sought intervention. It is from those decisions that the town now appeals.

On appeal, the town claims, inter alia, that the court improperly struck its verified pleadings because under § 22a-19 (a), the town may intervene in appeals from decisions of its zoning commission and its wetlands agency without improperly intruding on those entities' statutorily delegated authority. We agree that § 22a-19 (a) gives the town the right to intervene in the matters at issue and, consequently, conclude that the court acted improperly when it granted the plaintiff's motions to strike.[7]

As an initial matter, we note that the plaintiff's appeal from the decision of the zoning commission denying its application proceeded to judgment after the court granted the plaintiff's motion to strike. As such, it is

---

[6] Zoning commissions are established pursuant to General Statutes § 8-1 while wetlands agencies are established pursuant to General Statutes § 22a-42, a provision of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45.

[7] In both appeals, the town argues additionally that its special act charter gives it authority over environmental issues and that that authority justified intervention. In the appeal from the decision of the zoning commission, the town argues further that intervention was necessary due to a provision in the affordable housing statute, General Statutes § 8-30g (g), which places the burden on the commission on appeal to justify its denial of the plaintiff's application. This court notes that those arguments were not raised in the trial court and, therefore, we are not bound to address them on appeal. See Practice Book § 60-5. Nevertheless, because we agree with the town's primary claim, we need not reach its alternate arguments for reversal of the judgments.

necessary for us to decide if the issue of whether intervention was warranted in that case is moot. "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction . . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). "Most postjudgment appeals filed by would-be intervenors will be moot because the relief sought, i.e., intervention into the underlying action, cannot be granted once the action has gone to judgment." *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 806 n.3, 793 A.2d 260 (2002).

"Nevertheless, an otherwise moot question may qualify for review under the 'capable of repetition, yet evading review' exception. This exception permits review if other actions in the future (1) will encounter similar time constraints precluding appellate review, (2) will affect a group of similar complainants for whom this litigant may reasonably serve as a surrogate and (3) will similarly raise a question of public importance." *State* v. *Mordasky*, 84 Conn. App. 436, 442, 853 A.2d 626 (2004). In cases such as this, when a party is denied the right to intervene, there is a substantial likelihood that the underlying matter will go forward and conclude before an appeal can be filed and decided.[8] Further-

[8] Here, that was the case even though the court's granting of the plaintiff's motion to strike (effectively a denial of the town's motion to intervene) constituted under the circumstances a final judgment that was immediately appealable. See *Pathways, Inc.* v. *Planning & Zoning Commission*, 259 Conn. 619, 623, 793 A.2d 222 (2002) (" '[t]he test for determining whether an order denying a motion to intervene constitutes a final judgment is whether the would-be intervenor can make a colorable claim to intervention as a matter of right' "); *Red Hill Coalition, Inc.* v. *Town Plan & Zoning*

more, the town here is a reasonable surrogate for other municipalities that may want to invoke § 22a-19 (a) in the future to raise environmental concerns in proceedings before their land use agencies. Finally, in light of the policy concerns underlying the EPA and its aim of enabling broad citizen participation in matters that could impact the environment negatively,[9] the question of whether the EPA's intervention provision applies in the present context undoubtedly raises a question of public importance.

We now turn to the merits of the appeals. The question of whether § 22a-19 (a), read in conjunction with § 8-1 et seq. and the Inland Wetlands and Watercourses Act, permits the town to intervene in appeals from decisions of its zoning commission and wetlands agency presents an issue of statutory construction over which our review is plenary.[10] See *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 158, 856 A.2d 400 (2004). In undertaking our review, we are cognizant of the rule that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute

*Commission,* 212 Conn. 727, 734, 563 A.2d 1347 (1989) ("[s]ection 22a-19 [a] makes intervention a matter of right once a verified pleading is filed complying with the statute, whether or not those allegations ultimately prove to be unfounded"); *Polymer Resources, Ltd.* v. *Keeney,* 32 Conn. App. 340, 348–49, 629 A.2d 447 (1993) ("[Section] 22a-19 [a] compels a trial court to permit intervention in an administrative proceeding or judicial review of such a proceeding by a party seeking to raise environmental issues upon the filing of a verified complaint. The statute is therefore not discretionary.").

[9] The EPA includes a declaration of policy providing as follows: "It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15.

[10] Additionally, "[t]he denial of a motion to intervene as of right raises a question of law and warrants plenary review . . . ." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 142, 758 A.2d 916 (2000).

itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. Public Acts 2003, No. 03-154, § 1." (Internal quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 205, 853 A.2d 434 (2004).

If, however, application to the facts at hand of the plain language of the statute at issue and related provisions produces absurd or unworkable results, a court may look further in aid of its interpretation. In so doing, "we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute[s] [themselves], to the legislative history and circumstances surrounding [their] enactment, to the legislative policy [they were] designed to implement, and to [their] relationship to existing legislation and common law principles governing the same general subject matter. . . . *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003)." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 686, 855 A.2d 212 (2004).

That the EPA was intended to grant wide access to the state's various tribunals in order to protect the environment is evidenced by the EPA's declaration of policy, which provides in relevant part that "it is in the public interest to provide *all persons* with an adequate remedy to protect the air, water and other natural resources [of the state] from unreasonable pollution, impairment or destruction." (Emphasis added.) General Statutes § 22a-15. In support of that goal, § 22a-19 (a) on its face clearly conveys broad rights of intervention. It provides that "[i]n any administrative, licensing or

other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes § 22a-19 (a).[11] By its plain language, the provision would appear to encompass the intervention sought by the town here, insofar as the town is a political subdivision of the state[12] (and its town council, an instrumentality thereof) and, through its filing of verified pleadings, the town wanted to intervene in the judicial review of two administrative proceedings.[13] Nevertheless, as illustrated by the facts at hand, the resultant situation is to some degree unworkable and at least arguably absurd.

Specifically, the result of allowing the town to intervene in appeals from its zoning commission and wet-

---

[11] Subsection (b) of the statute requires the agency or court overseeing the proceeding to consider the alleged negative effect on the environment from the activity at issue and provides in relevant part that "no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." General Statutes § 22a-19 (b).

[12] See, e.g., General Statutes § 28-1 (12) (" '[p]olitical subdivision' means any city, town, municipality, borough or other unit of local government").

[13] "Proceedings before planning and zoning commissions are classified as administrative"; Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, 212 Conn. 727, 733, 563 A.2d 1347 (1989); and the EPA has been invoked in zoning matters since shortly after its passage. See H. Johnson, "The Environmental Protection Act of 1971," 46 Conn. B.J. 422, 436 nn.70–71 (citing proceedings).

lands agency is, effectively, to permit the town to thwart those agencies' efforts to resolve the appeals through negotiated settlement. See *Ralto Developers, Inc.* v. *Environmental Impact Commission*, 220 Conn. 54, 58, 594 A.2d 981 (1991) (General Statutes § 22a-43 [c] "requires the consent of all parties to an appeal before the court may approve a settlement withdrawing an appeal from a decision of an inland wetlands agency when the settlement agreement modifies the decision of that agency"); *Dietzel* v. *Planning Commission*, 60 Conn. App. 153, 160, 758 A.2d 906 (2000) (" 'All of the parties must consent to a stipulated judgment in a land use appeal made pursuant to [General Statutes §] 8-8 [n] or [§] 22a-43 [c] of the General Statutes. The same statutes may also be construed as preventing settlement of appeals without the consent of persons who intervene under section 22a-19 for the limited purpose of raising environmental issues.' " Quoting R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice [2d Ed. 1999] § 32.6, p. 131.). The court here in each of its memoranda of decision found, on the basis of statements made by the town's counsel at oral argument, that this was in fact the town's motivation in seeking to intervene in the two appeals. As noted by the court, intervention would give the town veto power over settlements that the zoning commission and wetlands agency believed met the needs of the town, including the need to protect the town's inland wetlands.

The situation is anomalous because it amounts to the town's taking a position before the court that is in opposition to the positions advocated by the town's proxies, the zoning commission and wetlands agency. Pursuant to the statutes under which they were created, the zoning commission and the wetlands agency are the town's representatives, acting on its behalf when carrying out the tasks within their respective purviews. See General Statutes § 8-1 (a) ("[a]ny municipality may,

by vote of its legislative body, adopt the provisions of [chapter 124 of the General Statutes governing zoning] and exercise *through a zoning commission* the powers granted hereunder" [emphasis added]); *Rommell* v. *Walsh*, 127 Conn. 16, 21, 15 A.2d 6 (1940) (stating that zoning entities "have ordinarily no corporate existence as such but are merely agencies of the municipality"); General Statutes § 22a-42 (c) ("[E]ach municipality shall establish an inlands wetlands agency or authorize an existing board or commission to carry out the provisions of [the Inland Wetlands and Watercourses Act] . . . . [T]he board or commission authorized by the municipality . . . shall serve as *the sole agent* for the licensing of regulated activities." [Emphasis added.]). Because strict application of § 22a-19 (a) here leads to the unusual circumstance of the town's being able to veto settlements reached by its agents and relating to matters that have been statutorily delegated to those agents, we will look further to extratextual sources to determine whether such application was intended by the legislature. "Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . ." (Citation omitted; internal quotation marks omitted.) *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 134, 674 A.2d 1349 (1996), quoting *Carothers* v. *Capozziello*, 215 Conn. 82, 120, 574 A.2d 1268 (1990).

Cases interpreting the EPA explain the problem it was intended to address and the role of § 22a-19 (a) in its resolution. "General Statutes § 22a-19 (a) is part of the Environmental Protection Act (EPA). General Statutes § 22a-14 et seq. The purpose of the EPA is to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution,

impairment or destruction. General Statutes § 22a-15."
(Internal quotation marks omitted.) *Red Hill Coalition,
Inc.* v. *Conservation Commission,* 212 Conn. 710, 715,
563 A.2d 1339 (1989), quoting *Connecticut Water Co.*
v. *Beausoleil,* 204 Conn. 38, 44, 526 A.2d 1329 (1987).
Accordingly, the EPA "expands the class of plaintiffs
who are empowered to institute proceedings to vindi-
cate the public interest." *Manchester Environmental
Coalition* v. *Stockton,* 184 Conn. 51, 55–56, 441 A.2d 68
(1981). "Statutes such as the EPA are remedial in nature
and should be liberally construed to accomplish their
purpose." Id., 57; see also *Keeney* v. *Fairfield
Resources, Inc.,* supra, 41 Conn. App. 132–33 ("[e]nvi-
ronmental statutes, such as our EPA, of which § 22a-
19 [a] is now a part, are considered remedial in nature
and are to be construed liberally to accomplish their
purpose").

Prior to enactment of the EPA, "[s]tanding had been
a hurdle to be overcome regardless of the integrity of
motives." H. Johnson, "The Environmental Protection
Act of 1971," 46 Conn. B.J. 422, 424 (1972). "Tradition-
ally, citizens seeking to protect the environment were
required to show specific, personal aggrievement to
attain standing to bring a legal action. . . . The [EPA],
however, waives the aggrievement requirement in two
circumstances. First, any private party, including a
municipality, without first having to establish
aggrievement, may seek injunctive relief in court 'for
the protection of the public trust in the air, water and
other natural resources of the state from unreasonable
pollution, impairment or destruction . . . .' General
Statutes § 22a-16. Second, any person or other entity,
without first having to establish aggrievement, may
intervene in any administrative proceeding challenging
'conduct which has, or which is reasonably likely to
have, the effect of unreasonably polluting, impairing or
destroying the public trust in the air, water or other

natural resources of the state.' General Statutes § 22a-19 (a)." (Citation omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 31, 755 A.2d 860 (2000), overruled in part on other grounds, *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002). Thus, "[u]nder [the EPA], standing no longer remains a problem, and the public interest may be presented without proof of direct, personal injury to the plaintiff." H. Johnson, supra, 425.

Our research has not disclosed any appellate decision barring a party from intervening on the basis of that party's identity not being encompassed by the broad language of § 22a-19 (a) or finding that the prospective intervenor somehow was not part of the public on which standing was intended to be conferred.[14] Rather, the cases seem to indicate that the statute, in that regard, contains no qualifications. See *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 360–61, 832 A.2d 611 (2003) (stating that "§ 22a-19 [a] on its face is extremely broad regarding the parties who may intervene"); *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 716 ("§ 22a-19 [a] allows any person to intervene to raise environmental issues in an existing judicial review of an agency action"); *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 57 ("[s]tanding is automatically granted under the EPA to 'any person' ").

Additionally, § 22a-19 (a) "plainly provides that intervention is authorized in *any* administrative, licensing

[14] There have been, however, cases in which standing pursuant to General Statutes § 22a-19 (a) has been found lacking on the ground that the tribunal before which intervention was sought did not have jurisdiction to consider the environmental issues raised in the motion; see *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 788 A.2d 1158 (2002); *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 470 A.2d 1214 (1984); or because the proceeding at issue was not one for which the statute allowed intervention. See *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 629 A.2d 447 (1993).

or other proceeding, and in any judicial review thereof made available by law. . . . Proceedings before planning and zoning commissions are classified as administrative." (Emphasis in original; internal quotation marks omitted.) *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* supra, 212 Conn. 733. It is clear that hearings before zoning commissions and wetlands agencies, and appeals from the resulting decisions of those entities are the types of proceedings encompassed by § 22a-19 (a). See, e.g., *Pathways, Inc.* v. *Planning & Zoning Commission,* 259 Conn. 619, 793 A.2d 222 (2002) (intervention in appeal from planning and zoning commission decision); *Queach Corp.* v. *Inland Wetlands Commission,* 258 Conn. 178, 779 A.2d 134 (2001) (intervention in appeal from wetlands agency decision); *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* 256 Conn. 674, 780 A.2d 1 (2001) (intervention in proceedings before planning and zoning commission); *Branhaven Plaza, LLC* v. *Inland Wetlands Commission,* 251 Conn. 269, 740 A.2d 847 (1999) (intervention in proceedings before wetlands agency).

Although the precise dynamic of the present case, a municipality intervening in appeals from its agencies' decisions, does not appear to have been specifically contemplated by the General Assembly during the debates leading to the passage of the EPA, the legislative history indicates that the classes of eligible intervenors and administrative proceedings were intended to be all inclusive. Describing § 3 of the EPA, now codified at General Statutes § 22a-16, which confers standing to bring actions for declaratory and injunctive relief to protect the environment, Senator Stanley J. Pac stated that "it confers the right of *each and every one of us,* the Attorney General, *political subdivisions* to bring a suit . . . ." (Emphasis added.) 14 S. Proc., Pt. 3, 1971 Sess., p. 1091, remarks of Senator Stanley J. Pac. Later, remarking on § 6 of the EPA, now General Statutes

§ 22a-19, he stated that *"in all the administrative and licensing procedures and any Judicial [re]view, any of the parties previously mentioned,* may intervene." (Emphasis added.) 14 S. Proc., supra, p. 1092.

Additionally, in the proceedings of the House of Representatives, Representative Francis W. Ciampi characterized the bill that became the EPA as "giv[ing] *anyone,* including the state [and] *its subdivision[s]* and any person or other legal [entity] a cause of action in [a] court of law *against anyone else* including the state or any of its subdivisions or any other person or other [legal] entity who unreasonably pollutes the environment." (Emphasis added.) 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 736–37, remarks of Representative Francis W. Ciampi. According to Representative Howard A. Newman, "[t]he bill will permit, will entitle an individual or *a group* to seek redress . . . ." (Emphasis added.) Id., p. 746, remarks of Representative Howard A. Newman. Representative Robert D. King described the bill as "an act which would [e]mpower individuals, *groups and organizations* or combinations of these to go into court and attempt to stop what they perceive to be an abuse of the environment." (Emphasis added.) Id., p. 747, remarks of Representative Robert D. King. Representative Abijah U. Fox characterized the bill as "allow[ing] *anyone* to go into court . . . ." (Emphasis added.) Id., p. 760, remarks of Representative Abijah U. Fox. Contemporaneous commentary was in accord, describing the recently passed legislation as creating standing for anyone against anyone. See H. Johnson, supra, 427 ("[t]he [EPA], in essence, provides that any person, group, corporation, or public official may sue anyone, including government officials, in order to protect the environment").

On the basis of the foregoing, it is difficult to conclude that the legislature intended any implicit exceptions to be read into the class of eligible intervenors contem-

plated by § 22a-19 (a) for any of the contemplated proceedings, including appeals from municipal land use decisions. That is all the more likely due to the fact that there is nothing explicit in the statutes governing zoning appeals; General Statutes § 8-8 et seq.; or those governing wetlands appeals; General Statutes § 22a-43 et seq.; that bars municipalities from participating therein.[15] "[T]he legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of laws." (Internal quotation marks omitted.) *St. George* v. *Gordon*, 264 Conn. 538, 553, 825 A.2d 90 (2003). Furthermore, pertinent case law, some of which preceded passage of the EPA, indicates that there is no court fashioned rule barring municipalities from participating in appeals brought from decisions of their land use agencies. Rather, the cases indicate that such participation is altogether proper.

In *Rommell* v. *Walsh,* supra, 127 Conn. 21, a case in which our Supreme Court considered who the proper parties were in appeals from administrative decisions, the court, in passing, noted the need for the public interest to be represented in certain matters and stated that "[i]n appeals in zoning cases the municipality might no doubt properly do this." While holding that zoning

---

[15] General Statutes § 8-8, which sets forth procedure for zoning appeals, does not specify who should be named as a defendant or who may intervene. Subsection (p) thereof provides, however, in relevant part that "[t]he appeal shall be considered to be a civil action and, except as otherwise required by this section or the rules of the Superior Court, *pleadings may be filed,* amended or corrected, and *parties may be* summoned, substituted or *otherwise joined, as provided by the general statutes.*" (Emphasis added.) General Statutes § 8-8 (p). Although General Statutes § 8-1 et seq. predates the EPA, it could be argued that this provision encompasses the verified pleadings and intervenors described in General Statutes § 22a-19 (a).

General Statutes § 22a-43, which sets forth procedures for appeals from wetlands agencies, similarly does not specify whether a municipality or its wetlands agency should be named as a defendant in a wetlands agency appeal.

and other boards also typically were proper defendants in appeals from their own decisions, the court nevertheless allowed that "[t]he municipality in the case of municipal boards may no doubt intervene as the principal representing the public interests concerned." Id., 23. That holding was reiterated eighteen years later in *Tyler* v. *Board of Zoning Appeals*, 145 Conn. 655, 658, 145 A.2d 832 (1958).

More recently, in a case interpreting a statutory provision governing service of process in zoning appeals, our Supreme Court discussed cases recognizing municipalities' interests in the validity and enforcement of their zoning regulations, and again indicated that they were proper parties in zoning appeals. See *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 380–83, 538 A.2d 202 (1988).[16] As stated by the court, "the interests

---

[16] The court's holding, that the statutory provision at issue, General Statutes § 8-8 (b), now (f), made the *clerk* of a municipality a *necessary party* to a zoning appeal, was thereafter abrogated by legislative amendment. Public Acts 1988, No. 88-79, § 1. Nothing in the legislative history of that amendment suggests, however, an intent that municipalities be barred from participating in zoning appeals. Rather, the legislature disagreed with the *Simko* court's holding that the clerk of a municipality was an indispensable party whose absence from an appeal created a jurisdictional defect. See Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1988 Sess., pp. 6–20, 22–23, 28–31, 32–42, 44. As stated by Vincent M. Simko, counsel for the plaintiffs in *Simko*, in his testimony advocating for the amendment: "One of the justices . . . said well, sometimes the city should be a party to these things. Well, you can always make them a party if you want to, but the point is if you want the city to be or the municipality to be a party to it, you don't say in the Act to make the Clerk a party to the action." Id., p. 17.

In sum, the legislature enacted the 1988 amendment to § 8-8 as a direct response to the holding in *Simko*, but that amendment included nothing to negate a particular assumption underlying the court's analysis, i.e., that a municipality is a proper party to a zoning appeal. "While we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 154, 788 A.2d 1158 (2002). Here, the legislature assuredly was aware of the underlying reasoning in *Simko* and,

of the municipality in a zoning appeal may not always coincide with those of the zoning board." Id., 381–82.[17] Subsequently, in *DeRito* v. *Zoning Board of Appeals*, 18 Conn. App. 99, 556 A.2d 632 (1989), this court found it unnecessary to resolve the potentially jurisdictional question of whether a town's building official had standing to appeal from a decision of the town's zoning board of appeals insofar as the town itself also was a party plaintiff whose standing the defendants did not contest. We stated then, citing *Simko* and *Tyler*, that "it is now settled that [t]he municipality concerned is always entitled to represent such [public] interests by participating as a party to an appeal." (Internal quotation marks omitted.) Id., 103.

The plaintiff concedes that those cases stand for the proposition that a municipality may participate in a zoning appeal, but it contends nevertheless that this is so only under certain circumstances, for example, when the municipality itself is an adjoining property owner or a permit applicant, i.e., when it has a direct interest in the outcome of the appeal. According to the plaintiff, the provisions of § 8-1 et seq., by implication, operate to bar a municipality from intervening in a zoning appeal when the effect of that intervention is "to revoke, undermine or interfere with its delegation [of functions to a zoning commission] under § 8-1," specifically, the functions of "adopting regulations, deciding permit applications and settling lawsuits involving permits." It claims that allowing "intervention by a town council in order to interfere with a previously delegated zoning function would in effect repeal § 8-1 and grant an impermissible

even though it amended § 8-8 thereafter, it said nothing to undermine that reasoning. Accordingly, we assume that it was in agreement.

[17] Cf. *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 613, 793 A.2d 215 (2002) (noting potential for collusion between applicant and planning and zoning commission, and recognizing "reality that there are cases in which the propriety of the conduct of the commission is open to criticism" [internal quotation marks omitted]).

veto to the town council over the zoning commission's actions."[18] The plaintiff cites the cases relied on by the court in its memoranda of decision to support that proposition. We disagree with each of the plaintiff's points and find the cases cited by the court to be inapposite.

First, *Rommell*, *Tyler*, *Simko* and *DeRito* did not involve municipalities as adjoining property owners or permit applicants. Moreover, nothing about the language used by the courts in those decisions suggests that municipalities' rights to participate in appeals should be limited to those circumstances. Rather, the statements regarding municipalities' rights to participate were unqualified. Regardless, there would never be a need for a municipality to seek intervention were it a permit applicant or adjoining property owner, as it would have direct standing to bring the appeal itself as an "aggrieved person" under § 8-8 (a) (1).[19]

Second, the plaintiff has not cited, nor has our research disclosed, any authority for the proposition that the functions of settling zoning and wetlands appeals are ones exclusively delegated to the zoning commission and wetlands agency, respectively, through operation of §§ 8-1 and 22a-42. The statutes are silent

[18] The plaintiff makes essentially the same argument as to the wetlands agency, arguing that the intervention statute "cannot be utilized to allow the legislative body to revoke, undermine or interfere with its delegation [of functions to a wetlands agency] under General Statutes § 22a-42 (c)," specifically, "adopting regulations, deciding permit applications and settling lawsuits involving permits . . . ." It claims that "allowing intervention by a town council in order to interfere with a previously delegated [wetlands agency] function would in effect repeal § 22a-42 (c) and grant an impermissible veto to the town council over the wetlands [agency's] actions."

[19] General Statutes § 8-8 (a) (1) provides in relevant part: " 'Aggrieved person' means a person aggrieved by a decision of a [zoning commission] . . . . In the case of a decision by a zoning commission . . . 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [zoning commission]."

in that regard, in contrast to the explicit assignment of authority to the zoning commission to establish, change or repeal zoning regulations; see General Statutes §§ 8-2, 8-3 (b); to make zone changes; see General Statutes § 8-3 (b); and to approve site plans; see General Statutes § 8-3 (g); and to the wetlands agency to promulgate regulations; see General Statutes § 22-42a (a); and to issue permits. See General Statutes § 22-42a (d).

In any event, the function of settling appeals, unlike those functions previously enumerated, is not really one that lends itself to exclusivity. To effectuate a settlement, the agreement of *all* parties to an appeal is required; see *Ralto Developers, Inc.* v. *Environmental Impact Commission*, supra, 220 Conn. 58; *Dietzel* v. *Planning Commission*, supra, 60 Conn. App. 160; as well as final court approval. See General Statutes § 8-8 (n) ("[n]o [zoning] appeal . . . shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement"); General Statutes § 22a-43 (d) (providing similarly regarding settlements of appeals from decisions of wetlands agencies). Additionally, it is difficult to view an intervening municipality's refusal to agree to a settlement as an improper usurpation of an agency's power when any other intervening party (for example, a concerned citizen or a public interest group) would be able to block a settlement in precisely the same manner.

Third, the cases relied on by the court, and by the plaintiff on appeal, are distinguishable. That is because each case concerned a function explicitly delegated by statute to a zoning commission, and a legislative body's direct and final override of the commission's action, and, further, one involved a regulatory mechanism that necessarily would lead in each instance to improper usurpation of the agency's delegated authority.

In *State ex rel. Bezzini* v. *Hines*, 133 Conn. 592, 594, 53 A.2d 299 (1947), the town's zoning commission adopted zoning regulations for a portion of the town, which thereafter were repealed by a vote at an adjourned town meeting. The court held that the vote was ineffective to repeal the zoning regulations because the town meeting lacked the power to repeal or to prevent enforcement of regulations, a function explicitly delegated to the zoning commission under the zoning statutes. Id., 596. In *Olson* v. *Avon*, 143 Conn. 448, 456, 123 A.2d 279 (1956), the court held invalid a provision in the town zoning regulations requiring approval by a majority vote at a town meeting of any amendment to the zoning regulations before that amendment could become effective. The court cited a clear "legislative intent . . . to vest the power both to enact and to change zoning regulations and zone boundaries exclusively in [town] zoning commissions" and concluded that "any attempt by a zoning commission to delegate the powers so vested in it to a town meeting is violative of the statute." Id., 454.

Thus, in both *Olson* and *State ex rel. Bezzini*, the towns' legislative bodies improperly had been afforded the final say on the amendment or repeal of zoning regulations, a matter exclusively committed to zoning commissions by § 8-3. Additionally, in *Olson*, the improper exercise of power by the town meeting actually was required by the town's regulatory procedure; *Olson* v. *Avon*, supra, 143 Conn. 449; ensuring that illegal delegation of authority would occur each and every time the zoning commission sought to amend a regulation.

The plaintiff claims that the end result of allowing the town to intervene in appeals is "precisely the same—a municipal legislative body acting as the final arbiter of

a zoning permit, rather than the zoning commission."[20] We disagree. As noted previously, it is the court that has the final say over any proposed settlement, not the parties. Moreover, intervention, when it does prevent settlement, may affect the course and length of an appeal, but it does not result in the intervenor's being the ultimate decision maker as to, e.g., the permit or regulatory change sought. In fact, it is the court that is the final arbiter in a zoning appeal. See General Statutes § 8-8 (*l*) ("[*t*]*he court*, after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from" [emphasis added]).[21] As well stated by the plaintiff in its briefs, § 22a-19 simply "*does not* provide or imply that the intervening party becomes the decision maker with respect to environmental issues." (Emphasis in original.) Instead, the municipality, like any other intervening party, merely is permitted to be heard on matters pertaining to the environment. Municipal input or advice on matters committed to an agency does not amount to illegal encroachment on that agency's authority. Cf. *Forest Construction Co.* v. *Planning & Zoning Commission*, 155 Conn. 669, 678, 236 A.2d 917 (1967) (holding commission's submission of proposed road specifications to town selectmen for approval not improper delegation of authority because commission ultimately would make final decision after receiving selectmen's report).

In sum, the court declines the plaintiff's invitation to read an exception into § 22a-19 (a) when there is no

[20] The plaintiff makes the same claim in the context of the wetlands appeal, arguing that the end result of allowing the town to intervene is "precisely the same—a municipal legislative body acting as the final arbiter of a wetlands permit, rather than the wetlands commission."

[21] Similarly, in an appeal from a wetlands agency decision, if "*the court* finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision." (Emphasis added.) General Statutes § 22a-43a (a).

indication that such was intended or is necessary. "Absent such language by the legislature, this court cannot engraft amendments into the statutory language. . . . As [our Supreme Court has] stated in numerous other cases, it is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and the courts must apply statutory enactments according to their plain terms." (Citations omitted; internal quotation marks omitted.) *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* supra, 212 Conn. 736.

Furthermore, "[t]he legislature is always presumed to be aware of all existing statutes and the effect that its action or nonaction will have on any of them"; *Wiseman* v. *Armstrong,* 269 Conn. 802, 822, 850 A.2d 114 (2004); and it also is presumed to be aware of existing judicial interpretations of those statutes. *State* v. *Morrissette,* 265 Conn. 658, 668, 830 A.2d 704 (2003). Accordingly, we presume that the legislature, when drafting the EPA, was aware of the statutes defining the purview of municipal land use agencies and governing appeals therefrom, and of the courts' interpretation of those statutes. If it had wanted to bar municipalities from utilizing § 22a-19 (a) to intervene in appeals from decisions of their land use agencies, it would have so said.

The judgments are reversed and the case involving the wetlands agency is remanded for further proceedings in which the town council shall be permitted to intervene.[22]

In this opinion DRANGINIS, J., concurred.

BERDON, J., dissenting. I agree with the trial court's well reasoned decisions in the above entitled matters,

---

[22] As previously discussed, the zoning action has gone to judgment.

both of which are published in the Connecticut Supplement, and would affirm the court's judgments. See *AvalonBay Communities, Inc.* v. *Zoning Commission*, 49 Conn. Sup. 183, 867 A.2d 884 (2003); *AvalonBay Communities, Inc.* v. *Inland Wetlands & Watercourses Agency*, 49 Conn. Sup. 188, 867 A.2d 887 (2003). I believe the court properly granted the motions to strike filed by the plaintiff, AvalonBay Communities, Inc. I therefore respectfully dissent.