NANCY BURTON *v*. COMMISSIONER OF
ENVIRONMENTAL PROTECTION
ET AL.
(SC 18173)

Rogers, C. J., and Norcott, Palmer, Zarella and Schaller, Js.

---

Argued October 15, 2008—officially released June 2, 2009

*Nancy Burton,* pro se, the appellant (plaintiff).

*Kimberly P. Massicotte,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Matthew I. Levine,* assistant attorney general, for the appellee (named defendant).

*Elizabeth C. Barton,* with whom were *Harold M. Blinderman* and, on the brief, *Sharon M. Seligman,* for the appellee (defendant Dominion Nuclear Connecticut, Inc.).

*Opinion*

PALMER, J. The plaintiff, Nancy Burton, brought this action against the defendants, the commissioner of environmental protection (commissioner) and Dominion Nuclear Connecticut, Inc. (Dominion), claiming that the operation of the Millstone Nuclear Power Station (Millstone), which is owned and operated by Dominion, is causing unreasonable pollution of the waters of the state in violation of the Connecticut Environmental Protection Act, General Statutes § 22a-14 et seq. (act). The plaintiff also claimed that she was entitled to relief under General Statutes § 22a-20[1] because the existing

[1] General Statutes § 22a-20 provides: "Sections 22a-14 to 22a-20, inclusive, shall be supplementary to existing administrative and regulatory procedures provided by law and in any action maintained under said sections, the court may remand the parties to such procedures. Nothing in this section shall prevent the granting of interim equitable relief where required and for as long as is necessary to protect the rights recognized herein. Any person entitled to maintain an action under said sections may intervene as a party in all such procedures. Nothing herein shall prevent the maintenance of an action, as provided in said sections, to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights. At the initiation of

administrative proceeding pertaining to the renewal of Dominion's permit to discharge wastewater from Millstone into the Long Island Sound is inadequate to protect the rights recognized by the act. The defendants filed motions to dismiss the complaint on the ground that the plaintiff lacked standing. The trial court treated the complaint as if it had been brought under General Statutes § 22a-16[2] and concluded that the plaintiff lacked standing to bring an action under that provision. The trial court also concluded that § 22a-20 did not provide an independent cause of action. The trial court therefore granted the defendants' motions to dismiss for lack of subject matter jurisdiction and rendered judgment for the defendants. On appeal,[3] the plaintiff claims that the trial court improperly determined that (1) she lacks standing under § 22a-16, and (2) § 22a-20 does not provide an independent cause of action. We conclude that the plaintiff has standing under § 22a-16 to raise her claim that the existing permit renewal

any person entitled to maintain an action under said sections, such procedures shall be reviewable in a court of competent jurisdiction to the extent necessary to protect the rights recognized herein. In any judicial review, the court shall be bound by the provisions, standards and procedures of said sections and may order that additional evidence be taken with respect to the environmental issues involved."

[2] General Statutes § 22a-16 provides in relevant part: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[3] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

proceeding is inadequate to protect the rights recognized by the act, in accordance with § 22a-20. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts. Millstone is an electric generating facility that is located in Waterford and powered by two nuclear power generating units. During operation, Millstone withdraws water from Niantic Bay to cool the generating units and then discharges the water into the Long Island Sound. These activities are authorized by a permit (discharge permit) issued by the state department of environmental protection (department) pursuant to 33 U.S.C. § 1342 and General Statutes § 22a-430.[4] The department originally issued the discharge permit in 1992 to Dominion's predecessor, Northeast Nuclear Energy Company (Northeast). On June 13, 1997, Northeast submitted to the department an application for renewal of the discharge permit. After Dominion purchased Millstone on March 31, 2001, the department approved the transfer of permits and authorizations for the operation of the facility from Northeast to Dominion, including an emergency authorization that the department had issued pursuant to General Statutes § 22a-6k.[5] The discharge per-

---

[4] "The federal Clean Water Act; 33 U.S.C. § 1342; and . . . § 22a-430, require any person or municipality to obtain a permit prior to discharging any substance into the waters of the United States or Connecticut. In Connecticut, the department is responsible for issuing both federal and state discharge permits. Permits for discharges to surface waters are known as National Pollution Discharge Elimination System (NPDES) permits." *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 23 n.4, 755 A.2d 860 (2000), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002).

[5] General Statutes § 22a-6k provides in relevant part: "(a) The Commissioner of Environmental Protection may issue an emergency authorization for any activity regulated by the commissioner under section 22a-32, subsection (h) of section 22a-39, 22a-54, 22a-66, 22a-174, 22a-208a, 22a-342, 22a-368, 22a-403, 22a-430, 22a-449 or 22a-454 provided he finds that (1) such authorization is necessary to prevent, abate or mitigate an imminent threat to human health or the environment; and (2) such authorization is not inconsistent with the federal Water Pollution Control Act, the federal Rivers and Harbors Act, the federal Clean Air Act or the federal Resource Conserva-

mit remained in effect pending disposition of the renewal application pursuant to General Statutes §§ 4-182 (b) and 22a-430 (c).

In August, 2006, the department issued its tentative draft decision to renew the discharge permit. Thereafter, the department received public comment on the draft decision, including correspondence from the plaintiff, in which she stated that, "if Millstone is to be permitted to continue to operate, it must be ordered to convert to a closed-loop cooling system." In November, 2006, the plaintiff filed a notice of intervention in the permit renewal proceeding pursuant to General Statutes § 22a-19,[6] claiming, inter alia, that Millstone's operations would "entrain and impinge [marine life], a natural resource of vital import[ance] to the state, and thereby continue the process by which indigenous fish stocks have been devastated," that the operations would "continuously release vast quantities of hot water [in]to the Long Island Sound, thereby directly endangering [marine life] and marine habitat and contribut[e] significantly to the warming of the Long Island Sound," and that "implementation of a closed cooling system

---

tion and Recovery Act. . . ."

[6] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect as long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

in lieu of the current 'once-through' cooling system . . . would virtually eliminate waterborne adverse impacts to the marine environment . . . ." The hearing officer allowed the plaintiff to intervene for the purpose of raising these claims but excluded numerous other claims that the plaintiff had made in her motion for intervention concerning Dominion's and the department's alleged collusion and past illegal activities, as well as the potentially adverse impact of radioactive pollution. The plaintiff filed a motion for reconsideration in which she claimed, inter alia, that the hearing officer's "decision manifests rank prejudice, prejudgment, legal error and extraordinary disregard for the letter and spirit of [the act]." The hearing officer denied the plaintiff's motion for reconsideration.

Thereafter, in March, 2007, the plaintiff brought the present action, alleging that (1) the water discharged from Millstone is polluted with toxic chemicals and radioactive byproducts of the nuclear fission process, (2) the water is discharged at a higher temperature than the ambient temperature of the water in the Long Island Sound, (3) the chemical and waste byproducts accumulate in the Niantic Bay and Jordan Cove, and contaminate the water and destroy marine life, (4) "[a]t the reactor intakes, billions of microscopic and larger [marine life] are destroyed through entrainment and impingement annually," and (5) the facility has "devastated the populations of indigenous fish and other species . . . ." The plaintiff also alleged that (1) the commissioner's predecessor, Arthur J. Rocque, Jr., "believed [that] he lacked legal authority to issue and renew . . . 'emergency authorizations' but issued them nevertheless,"[7] (2) the current commissioner,

---

[7] In support of this claim, the plaintiff attached to her complaint a copy of a transmittal sheet for the renewal of the emergency authorization from the department's bureau of water management to Rocque, among others. A handwritten note on the transmittal sheet states: "I really hate these. Statutes are very limited in what the[y] define as 'emergency.' Continuing emergency is not even contemplated." It is unclear who wrote the note.

Regina McCarthy, "has permitted Millstone to operate pursuant to the illegal 'emergency authorizations' since her appointment," (3) the hearing officer assigned to the permit renewal proceeding ha[s] a conflict of interest and [is] biased, and (4) the department has prejudged the permit renewal application and has declined to consider the environmental impact of Millstone's discharge water.[8] The plaintiff sought a temporary restraining order and a temporary injunction requiring Dominion to reduce Millstone's "water intakes to 'cold shutdown' levels from April 1 through May 15, 2007,"[9] an order that Dominion "convert Millstone to a closed cooling system . . . prior to 2010," and a judgment declaring that the existing administrative and regulatory procedures are inadequate for the protection of the rights recognized by the act. The plaintiff also sought an ex parte temporary restraining order directing Dominion to reduce water intakes to "[c]old [s]hutdown" levels from April 1 through May 15, 2007, and enjoining the administrative proceedings. The trial court, *Bryant, J.*, denied the application for an ex parte temporary restraining order and scheduled a hearing on the plaintiff's request for a temporary injunction for March 19, 2007. On that date, however, the defendants filed motions to dismiss, which the court considered at that time.[10] After the hearing but before the court, *Bryant, J.*, had rendered a decision on the motions to

---

[8] In her complaint, the plaintiff stated that she was bringing this action "pursuant to the provisions of the [act], [General Statutes §] 22a-1 et seq." General Statutes § 22a-14 provides: "Sections 22a-14 to 22a-20, inclusive, shall be known and may be cited as the 'Environmental Protection Act of 1971'." Thus, General Statutes §§ 22a-1 through 22a-13 technically are not part of the act.

[9] The plaintiff claims that April 1 through May 15 represents "the period of peak indigenous Niantic winter flounder larvae migration . . . ."

[10] The plaintiff apparently agreed to waive her right to file a brief responding to the motions to dismiss in order to avoid any delay with respect to the adjudication of her application for a temporary injunction.

dismiss, the case was reassigned to the court, *Tanzer, J.*, who conducted a second hearing on the motions.

Thereafter, the trial court, *Tanzer, J.*,[11] granted the motions to dismiss. In its memorandum of decision, the court stated that, "[a]lthough the plaintiff did not identify §§ 22a-16 and 22a-19 (a) by number or title in her complaint or supporting memoranda, the court [would] overlook this procedural error and address both sections." Relying on this court's decisions construing the standing requirements of § 22a-16, the trial court concluded that, because the conduct that the plaintiff alleged in her complaint arose out of a permitting proceeding, the plaintiff lacked standing. E.g., *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 148, 836 A.2d 414 (2003) ("[when] the alleged conduct involves a permitting claim . . . there is no standing pursuant to § 22a-16 to bring the claim directly in the Superior Court"). The court also concluded that § 22a-20 did not provide an independent cause of action. Accordingly, the trial court rendered judgment dismissing the plaintiff's complaint for lack of subject matter jurisdiction.

This appeal followed. The plaintiff claims that the trial court improperly determined that she lacked standing under § 22a-16 and that § 22a-20 does not create an independent cause of action. Although we conclude that § 22a-20 does not create an independent cause of action, we also conclude that the plaintiff has standing under § 22a-16 to raise her claim that the existing permit renewal proceeding is inadequate to protect the rights recognized by the act, in accordance with § 22a-20.

Because a proper understanding of the applicable statutory scheme is necessary for our resolution of this matter, we first consider whether § 22a-20 creates an independent cause of action and, if not, the purpose of

---

[11] Hereinafter, all references to the trial court are to *Tanzer, J.*

that statute. This issue presents a question of statutory interpretation over which our review is plenary. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294, 933 A.2d 256 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 294–95.

We begin with the relevant language of the statute: "Sections 22a-14 to 22a-20, inclusive, shall be supplementary to existing administrative and regulatory procedures provided by law . . . . Any person entitled to maintain an action under said sections may intervene as a party in all such procedures. Nothing herein shall prevent the maintenance of an action, as provided in said sections, to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights." General Statutes § 22a-20. The plaintiff contends that the latter two sentences of the

quoted portion of the statute implicitly authorize an independent cause of action under any of the sections referred to in the first sentence, including § 22a-20.

We are not persuaded. First, as a purely linguistic matter, nothing in the latter two sentences authorizes any person to bring an action. Rather, the sentences merely refer to actions that *are* authorized by the act. Second, it is readily apparent that several of the sections listed in the first sentence of § 22a-20 do *not* create independent causes of action.[12] Indeed, a comparison of the language of §§ 22a-16 and 22a-19 with the language of the other sections listed in the first sentence of § 22a-20 demonstrates that *only* §§ 22a-16 and 22a-19 contain language that explicitly confers standing to initiate legal proceedings. General Statutes § 22a-16 provides in relevant part that "any person . . . may maintain an action in the superior court . . . for declaratory and equitable relief against . . . any person . . . for the protection of the public trust in the . . . natural resources of the state from unreasonable pollution . . . ." General Statutes § 22a-19 (a) provides in relevant part that "any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably . . . destroying the public trust in the . . . natural resources of the state." No comparable authorizing language appears in § 22a-20 or in any of the other sections listed in the first sentence of § 22a-20.

The plaintiff contends, however, that, even if § 22a-20 does not explicitly create an independent cause of

---

[12] For example, General Statutes § 22a-15 sets forth state policy regarding the preservation of the public trust in the air, water and other natural resources of the state, General Statutes § 22a-16a provides certain remedies in an action brought pursuant to § 22a-16 or other provisions providing for civil or criminal penalties, and General Statutes § 22a-17 establishes an affirmative defense to an action brought pursuant to § 22a-16.

action, it implicitly does so. In support of this claim, she relies on this court's decision in *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997), in which we stated that, "[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) Id., 249. The plaintiff contends that, because the legislature conferred on "[a]ny person" the right to seek judicial relief to protect the environment; General Statutes § 22a-20; the answer to all three of these questions clearly is "yes." The plaintiff's argument is flawed. Section 22a-20 does not itself confer on any person the right to seek judicial relief. This stands in marked contrast to other provisions of the act, in which the legislature explicitly has provided recourse to persons seeking to protect the environment. See General Statutes § 22a-16. In such circumstances, we are reluctant to recognize a cause of action not expressly created under the act, at least in the absence of a persuasive reason to do so, and the plaintiff has not identified any such reason in the context of the present case. Furthermore, we are not aware of any indication of legislative intent to create a cause of action in addition to and independent of § 22a-16. Accordingly, we reject this contention of the plaintiff.

In addition, we reject the plaintiff's contention that § 22a-20 would be superfluous if it was not intended to create an independent cause of action. The first sentence of General Statutes § 22a-20 provides that the

provisions of the act "shall be supplementary to existing administrative and regulatory procedures provided by law . . . ." This provision clarifies that the existence of an administrative or regulatory procedure governing the conduct complained of does not deprive the trial court of jurisdiction over claims brought pursuant to § 22a-16. Similarly, the provision in General Statutes § 22a-20 that "[n]othing herein shall prevent the maintenance of an action . . . to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights [recognized by the act]," allows a plaintiff to seek relief under § 22a-16 even if the conduct complained of is the subject of other administrative or regulatory procedures. General Statutes § 22a-20 further provides that, in any action pursuant to § 22a-16, the trial court may review existing administrative and regulatory procedures "to the extent necessary" to protect the rights granted by the act and, in doing so, may take "additional evidence . . . ." Thus, the existence of an independent action under § 22a-20 is not necessary to protect the rights recognized by the act because the procedure described in § 22a-20 may be invoked in an action pursuant to § 22a-16. Accordingly, we conclude that § 22a-20 does not create an independent cause of action.

We next address the issue of whether the plaintiff had standing to bring an action under § 22a-16.[13] We

---

[13] As we have indicated, the plaintiff did not specifically state in her complaint that she brought the present action under § 22a-16. Practice Book § 10-3 (a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." "This court repeatedly has recognized, however, that, "[a]s long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, 285 Conn. 618, 628, 941 A.2d 266 (2008). The trial court treated the plaintiff's action as if it had been brought under § 22a-16, and the defendants do not challenge that ruling on appeal. Indeed, in its brief to this court, Dominion characterizes this action as "a fatally

begin our analysis by setting forth the applicable standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The

flawed § 22a-16 . . . action." Accordingly, we treat the plaintiff's action as an action brought under § 22a-16.

requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . .

"Traditionally, citizens seeking to protect the environment were required to show specific, personal aggrievement to attain standing to bring a legal action. . . . The [act] . . . however, waives the aggrievement requirement in two circumstances. First, any private party, including a municipality, without first having to establish aggrievement, may seek injunctive relief in court for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . . General Statutes § 22a-16. Second, any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging conduct which has, or which is reasonably likely to have, the effect of unreasonably

polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. General Statutes § 22a-19 (a)." (Citations omitted; internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque,* supra, 267 Conn. 127–29.

"Under § 22a-16, standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state. . . . Although it is true, of course, that the plaintiff need not prove [his or her] case at this stage of the proceedings . . . the plaintiff nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London,* 282 Conn. 791, 804, 925 A.2d 292 (2007). "A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § 22a-16 . . . ." (Internal quotation marks omitted.) Id. Rather, it "must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id., 804–805.

In the present case, we conclude that the plaintiff's complaint adequately sets forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from Millstone's operation. The complaint contains specific allegations of harm to the marine life in the Long Island Sound, Niantic Bay and Jordan Cove, both through the discharge of contaminated and heated water into those bodies of water and through the "en-

trainment and impingement" of marine organisms at the reactor intakes. The plaintiff also specifically alleged that the existing permit renewal proceeding is inadequate to protect the rights recognized by the act because the hearing officer is biased and the department has prejudged the matter, thereby entitling her to judicial review of the proceeding under § 22a-20. In essence, therefore, the plaintiff alleges that, if the hearing officer and the department had fairly and impartially conducted the permit renewal proceeding, they would not have allowed Dominion to continue Millstone's operations under the emergency authorization or issued the tentative decision to renew the discharge permit because the impact of the operations on the marine life in the neighboring bodies of water is more harmful than that permitted by the applicable regulatory scheme.

The defendants contend, however, that, because the plaintiff's claims are premised entirely on alleged flaws in the permitting process, she has no standing to bring an action pursuant to § 22a-16. See *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 148 (*Connecticut Coalition*); see also *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 394, 880 A.2d 865 (2005) ("§ 22a-16 does not confer standing on a plaintiff who seeks to challenge the validity of the permitting process"). We conclude that the defendants read *Connecticut Coalition* and *Lewis* too broadly. In both of those cases, the plaintiffs' claims under the act were premised entirely on allegations of technical or procedural violations of the governing permitting statutes and regulations.[14] As we stated in *Connecticut Coalition*, "a

---

[14] In *Connecticut Coalition*, "the plaintiffs' claim of unreasonable pollution [was] based [on] allegations that: (1) the 1992 permit became invalid on December 14, 1997, the day it expired, and ha[d] remained invalid since that time because the facility was not engaged in operations of a continuing nature as contemplated under [General Statutes § 4-182 (b)] when the permit renewal application was filed; and (2) the issuance of the 'emergency' authorization violated the letter and spirit of § 22a-6k because it was one in a series of authorizations *routinely* issued to Northeast over a period of years

claim that conduct is not properly authorized does not

and, hence, did not address an 'imminent threat to human health or the environment . . . .' " (Emphasis in original.) *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 134; see also id., 145–46 ("the plaintiffs did not make an allegation of direct harm to the environment . . . but alleged unlawful and unreasonable pollution on the ground that [the defendant] Millstone [was] operating without a valid permit and emergency authorization"). Although the plaintiffs' complaint in *Connecticut Coalition* contained an allegation that "[t]he intake and discharge activities of [certain] Millstone Units . . . involve conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state"; *Connecticut Coalition Against Millstone* v. *Rocque*, Supreme Court Records & Briefs, March Term, 2003, Pt. 2, Record p. 10; the complaint contained no specific factual allegations to support that claim, beyond allegations that the defendants had violated certain technical provisions of the applicable regulatory scheme. See generally id., pp. 4–10. For example, the plaintiffs in *Connecticut Coalition* alleged that the named defendant, Rocque, the former commissioner of environmental protection, had violated § 22a-6k (a) by issuing an emergency authorization but claimed only that the authorization was not necessary to "prevent, abate or mitigate an imminent threat to human health or the environment," as required by statute; (internal quotation marks omitted) id., p. 7; not that its issuance would result in unreasonable pollution, i.e., pollution in excess of that permitted under the regulatory scheme. See, e.g., *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002) ("when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under [the act], whether the conduct is unreasonable under [the act] will depend on whether it complies with that scheme"). Nor did the plaintiffs in *Connecticut Coalition* make any claim pursuant to § 22a-20 that the existing permit renewal proceeding was inadequate to ensure that the defendants in that case would comply with the applicable regulatory scheme. See generally *Connecticut Coalition Against Millstone* v. *Rocque*, Supreme Court Records & Briefs, supra, pp. 4–10.

In *Lewis*, "the gravamen of the . . . complaint [was] twofold: first, the wetlands permit that the [planning and zoning] commission had issued to [the defendant developer] was invalid because the process pursuant to which that permit was issued was flawed, and, second, [the developer] unlawfully constructed a storm drainage system before obtaining the necessary permit." *Lewis* v. *Planning & Zoning Commission*, supra, 275 Conn. 393–94; see also id., 394 ("[t]he crux of the plaintiff's claim is that [the developer] is unreasonably polluting the wetlands because it failed to obtain the necessary permit before constructing the storm drainage system, not that [the developer's] construction of the system has or likely will cause unreasonable pollution").

necessarily establish that the conduct causes unreasonable pollution under [the act]." *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 141.

We also stated in *Connecticut Coalition*, however, that "the fact that conduct may be permitted under the relevant environmental statute does not preclude a claim that the activity causes unreasonable pollution under [the act], as when the alleged pollution exceeds the amount approved in the permit." Id.; cf. *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 293 ("a determination that the work was required to be, but was not, in compliance with the substantive provisions of the applicable inland wetlands regulations could support a finding that it constituted unreasonable pollution under [the act]"); *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 282 Conn. 808 ("[a] claim that the defendant has violated the *substantive* provisions of [a statute imposing environmental standards] . . . may give rise to an inference that the conduct causes unreasonable pollution" [emphasis in original]). Thus, we have recognized that the mere fact that conduct comes within the scope of a statutory permitting scheme does not preclude a claim under the act if, as in the present case, the plaintiff makes a colorable claim that the conduct will cause unreasonable pollution.

We acknowledge that, in a number of earlier cases, this court did not expressly distinguish cognizable claims under the act that involve polluting conduct that comes within the scope of a statutory permitting scheme from impermissible claims that implicate only technical or procedural violations of the permitting scheme. In *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 473 A.2d 787 (1984), overruled in part by *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002), for example, this court stated broadly that "invocation of the [act] is not an open sesame for

standing to raise environmental claims with regard to any and all environmental legislation." *Middletown* v. *Hartford Electric Light Co.*, supra, 597. We concluded that the plaintiffs in that case lacked standing, under a variety of environmental statutes, to challenge the failure of the defendant utility companies to obtain certain permits to burn mineral oil containing polychlorinated biphenyls. Id., 593, 596–97; see also id., 596 ("[w]e are unpersuaded that the legislature intended, in the cited statutes, to create private causes of action to supplement the pervasive regulatory powers of the [department] over environmental licenses"). We also noted, however, that the trial court in that case had concluded that the plaintiffs had standing to bring an action under § 22a-16 because they had claimed that the burning of the oil was "reasonably likely to result in the unreasonable pollution, the impairment of and the destruction of the public trust in the air, water resources and other natural resources [of the state]." (Internal quotation marks omitted.) Id., 600. That ruling was not challenged on appeal. Id. Thus, as in *Connecticut Coalition*, our conclusion in *Middletown* that the plaintiffs lacked standing to bring a claim involving polluting conduct that was within the jurisdiction of an administrative body was limited to pure permitting claims.[15] See id., 596–97. The plaintiffs' claim under § 22a-16 that the same conduct would result in unreasonable pollution was cognizable. See id., 600.

In *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 755 A.2d 860 (2000), overruled in part by *Waterbury* v. *Washington*, supra, 260 Conn. 545, we again stated that the courts do not have jurisdiction "to litigate environmental issues that are governed by § 22a-

---

[15] We use the phrase "pure permitting claims" to refer to claims involving allegations of technical or procedural violations of a statutory permitting scheme, as opposed to claims that involve allegations of substantive violations giving rise to unreasonable pollution.

430, and which clearly have been placed within the exclusive domain of the department."[16] *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 34. To the extent that we concluded in *Fish Unlimited* that courts lack jurisdiction under § 22a-16 over *any* claim that involves polluting conduct that is within the jurisdiction of an administrative body, however, that conclusion was inconsistent with *Middletown* and was expressly overruled by this court in *Waterbury* v. *Washington*, supra, 506, in which we held that the doctrine of exhaustion of administrative remedies does not apply to claims of unreasonable pollution brought under the provisions of the act.[17] Id., 545. In reaching that conclusion, we relied heavily on the language of General Statutes § 22a-18, which provides in relevant part that a trial court has "discretion . . . whether to remand an action [brought pursuant to § 22a-16] to an administrative agency that has within its jurisdiction . . . appropriate 'administrative, licensing or other such proceedings . . . .' General Statutes § 22a-18 (b)." *Waterbury* v. *Washington*, supra, 532. We reasoned that this provision could never be invoked if the plaintiff were required to exhaust

---

[16] We note that at least some of the plaintiffs' claims in *Fish Unlimited* were pure permitting claims, which would not be cognizable even under the narrower language of *Lewis* and *Connecticut Coalition*. See *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 28–29 (plaintiffs claimed that defendant utility companies had made certain misrepresentations in their permit renewal application, that they had acted in bad faith in their efforts to renew permit and that defendant utility companies and department had acted in bad faith and in collusion).

[17] In *Connecticut Coalition* we noted that, in *Waterbury* v. *Washington*, supra, 260 Conn. 538–39, this court had characterized *Fish Unlimited* and *Middletown* "as being based on a theory of exhaustion of administrative remedies." *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 146. We clarified in *Connecticut Coalition* that *Fish Unlimited* and *Middletown* actually stood for the proposition that plaintiffs lack standing under § 22a-16 "to litigate environmental issues that . . . clearly have been placed within the exclusive domain of the department." (Internal quotation marks omitted.) Id. As we state in this opinion, the holding in *Middletown* was limited to pure permitting claims, and we overruled the broader holding in *Fish Unlimited* in *Waterbury* v. *Washington*, supra, 545.

administrative remedies before bringing an action under the act. Id. Similarly, General Statutes § 22a-20 expressly provides in relevant part that an action pursuant to § 22a-16 is "supplementary to existing administrative and regulatory procedures provided by law and in any action maintained under [§ 22a-16], the court *may* remand the parties to such procedures. . . ." (Emphasis added.) Thus, as we have indicated, the mere fact that an administrative body has jurisdiction over an environmental issue, including a permitting proceeding, does not deprive the courts of jurisdiction over a claim brought under § 22a-16 that involves that environmental issue or that arises from the proceeding. Rather, to have standing under § 22a-16 to raise such a claim, a plaintiff need only make a colorable claim "that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken."[18] (Internal

---

[18] The commissioner claims that, "[f]or the court to determine matters entrusted by the legislature to administrative agencies without first allowing the agency to review and decide those issues would constitute an impermissible judicial usurpation of the administrative functions of [the department]." In support of this claim, the commissioner relies on our decision in *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 153, 365 A.2d 387 (1976) (for court to "direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority" [internal quotation marks omitted]). Under the act, however, a court is expressly authorized to adjudicate the impact of a defendant's conduct on the rights recognized by the act if it determines that applicable administrative proceedings are inadequate. See General Statutes § 22a-18 (c) ("[i]f the agency's consideration has not been adequate, and notwithstanding that the agency's decision is supported by competent material and substantial evidence on the whole record, the court shall adjudicate the impact of the defendant's conduct on the public trust in the air, water or other natural resources of the state in accordance with [the act]"); General Statutes § 22a-20 ("[n]othing herein shall prevent the maintenance of an action, as provided in [the act], to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights").

We recognize that, in *Connecticut Coalition*, this court stated that "construing the plaintiffs' claim of an invalid permit and emergency authorization as an independent claim of unreasonable pollution under § 22a-16 would

quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 282 Conn. 804–805.

The commissioner contends that the plaintiff has not claimed that Dominion has failed to comply with the discharge permit or that the defendants otherwise have violated the statutory scheme, but has claimed only that the statutory permitting scheme is not stringent enough. The commissioner contends that, under *Waterbury* v. *Washington*, supra, 260 Conn. 506, the act does not authorize the courts to impose stricter environmental standards than that provided in the applicable regulatory scheme. See id., 557 ("when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under [the act], whether the conduct is unreasonable under [the act] will depend on whether it complies with that scheme").[19] We agree with the commissioner's reading

effectively remove from the department and give to the court the department's authority under § 22a-430 to make decisions regarding permit applications. It is not our function to take such a step; that determination rests with the legislature." *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 139. As we have explained, however, the plaintiffs in *Connecticut Coalition* did not claim that the invalid permit and emergency authorization would result in unreasonable pollution, i.e., pollution in excess of that allowed by the regulatory scheme, or that the existing administrative proceedings were inadequate to protect the rights recognized by the act.

[19] We stated in *Waterbury* that "[w]e draw this conclusion from the overriding principle that statutes should be construed, [whenever] possible, so as to create a rational, coherent and consistent body of law. . . . It would be inconsistent with that principle to conclude, [in the absence of] some clear indication to the contrary, that the legislature intended that the same conduct that complies with an environmental legislative and regulatory scheme specifically designed to govern it, nonetheless could be deemed by a court to be an unreasonable impairment of the environment. Put still another way, it would be anomalous to conclude that the legislature has, as a general matter, enacted an environmental regulatory scheme that runs on two different tracks with respect to the same conduct: one that requires compliance with specific criteria promulgated by a regulatory agency pursuant to a specific legislative enactment; and a second that lodges in a court the determination of whether the same conduct comes within the very general standard of reasonableness, irrespective of whether it is in compliance with those

of *Waterbury*. We disagree, however, that the plaintiff in the present case is seeking to have the court impose stricter environmental standards than that provided by statute and regulation. Rather, she is claiming, pursuant to § 22a-20, that the permit renewal proceeding is inadequate to protect the rights recognized by the act—the scope and contours of which are, under *Waterbury*, defined by the permitting scheme itself—because the hearing officer and the department have not conducted the proceeding fairly and impartially. Thus, she seeks to have the trial court enforce compliance with the existing statutory scheme, not to conceive and impose its own standard of reasonableness.[20] We conclude, therefore, that the plaintiff has standing to bring an action pursuant to § 22a-16 and that the trial court improperly dismissed her complaint for lack of subject matter jurisdiction.[21]

---

specific criteria." (Citations omitted.) *Waterbury* v. *Washington*, supra, 260 Conn. 557–58. In reaching this conclusion, we did not address the provision of General Statutes § 22a-20 allowing the maintenance of an action pursuant to § 22a-16 when "existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights [recognized by the act]." We need not consider in the present case whether *Waterbury* is consistent with § 22a-20, however, because the plaintiff is not seeking the imposition of stricter environmental standards than that provided by statute. Rather, she is claiming that the permit renewal proceeding is inadequate to protect the rights recognized by the act because the commissioner and the hearing officer have failed to enforce the existing statutory scheme.

[20] We recognize that, as an intervenor in the permit renewal proceeding, the plaintiff could raise these claims at the conclusion of the proceeding in an appeal pursuant to General Statutes § 22a-437 (a). Cf. *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 34, 959 A.2d. 569 (2008) (plaintiffs, as environmental intervenors under § 22a-19, could appeal from decision of commissioner under General Statutes § 22a-43 for limited purpose of raising issues regarding pollution, impairment or destruction of state's inland wetlands and watercourses). The existence of that remedy, however, does not deprive the plaintiff of standing under § 22a-16. See General Statutes § 22a-20 (action pursuant to § 22a-16 is supplementary to existing administrative procedures); see also *Waterbury* v. *Washington*, supra, 260 Conn. 545 (plaintiff had standing to bring action under § 22a-16 without exhausting administrative remedies).

[21] We, of course, consider only the claims that the plaintiff raises. We need not, and do not, address the extent to which any other claim may satisfy the statutory requirements.

The sole remaining issue is the appropriate remedy on remand. If the trial court determines that the plaintiff has not established that the hearing officer is biased or the department has prejudged the permit renewal application and that the permit renewal proceeding is adequate to protect the rights recognized by the act, the court then will have the discretion to stay this action pending completion of the permit renewal proceeding. See *Waterbury* v. *Washington*, supra, 260 Conn. 546 ("under the . . . doctrine of primary jurisdiction, which is embodied by § 22a-18 of [the act], the court has discretion, and in certain cases should refer the case, or certain aspects of it, to the administrative agency, yet retain jurisdiction for further action, if appropriate, under that section"). If, on the other hand, the trial court determines that the permit renewal proceeding is inadequate to safeguard the rights recognized by the act, the court may stay those proceedings and craft orders to ensure that those rights are adequately protected. We leave the scope of any such orders to the informed discretion of the trial court.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.