NANCY BURTON *v.* DOMINION NUCLEAR
CONNECTICUT, INC.
(AC 31349)

Harper, Bear and Peters, Js.

204

Argued December 3, 2010—officially released May 31, 2011

*Nancy Burton*, pro se, the appellant (plaintiff).

*Kimberly P. Massicotte*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Matthew I. Levine*, assistant attorney general, for the appellee (defendant commissioner of environmental protection).

*Elizabeth C. Barton*, with whom were *Harold M. Blinderman* and *Rene A. Ortega*, for the appellee (named defendant).

*Opinion*

BEAR, J. The plaintiff, Nancy Burton, appeals from the judgment of the trial court concluding that she did not have standing to maintain her action for declaratory and injunctive relief against the defendant Dominion Nuclear Connecticut, Inc., (Dominion). The commissioner of environmental protection (commissioner) was granted intervenor status shortly after the plaintiff filed suit and, therefore, is also a defendant in this action and a party to the appeal. On appeal, the plaintiff claims that the court improperly concluded that she lacked standing. She also claims that the court improperly denied her the opportunity to present witnesses in support of her standing claim and to cross-examine the affiant of an affidavit that the commissioner submitted in support of her motion to dismiss. Dominion raises three alternate grounds; see Practice Book § 63-4 (a) (1) (A);[1] for affirming the judgment of the trial court:

---

[1] Practice Book § 63-4 (a) provides in relevant part: "At the time the appellant sends a copy of the endorsed appeal form and the docket sheet to the appellate clerk, the appellant shall also send the appellate clerk an original and one copy of the following: (1) A preliminary statement of the

(1) the plaintiff's action sought relief only for a particular time period, which time period has passed, thereby rendering the case moot; (2) the plaintiff's case is barred by the prior pending action doctrine; and (3) the plaintiff failed to exhaust her administrative remedies. We conclude that the court properly determined that the plaintiff does not have standing to pursue this action. Accordingly, we affirm the judgment of the trial court.

In her action, the plaintiff claimed that the operation of the Millstone Nuclear Power Station (Millstone), which is owned and operated by Dominion, is illegally withdrawing more than two billion gallons of water daily from Long Island Sound for cooling purposes, in violation of the Connecticut Environmental Protection Act of 1971 (act), General Statutes § 22a-14 et seq., and the Connecticut water quality standards, as adopted by the department of environmental protection (department). She claimed that this conduct constituted an unreasonable destruction of a natural resource, because "billions of marine life, including Niantic River winter flounder larvae, are sucked in and entrained at . . . Millstone . . . and ultimately destroyed . . . [and] the population of the Niantic River winter flounder has plummeted to dangerously low levels nearing collapse and extinction." The plaintiff brought her action pursuant to the act, particularly General Statutes §§ 22a-16, 22a-18 and 22a-20. The defendants filed motions to dismiss the complaint on the ground that the plaintiff lacked standing. The court granted the motions to dismiss on April 30, 2009, via a written memorandum of decision.

In its April 30, 2009 memorandum of decision, the court explained that the plaintiff did not have standing

issues intended for presentation on appeal. If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues . . . ."

pursuant to § 22a-16 because the regulation of Millstone's cooling system was governed by the permitting process outlined in General Statutes § 22a-430 and, therefore, was within the exclusive province of the department. The court explained: "[E]ssentially, while § 22a-16 creates a broad class of litigants by removing the aggrievement requirement to have standing to bring suit, it is limited in scope in that it does not apply when the legislature has delegated the resolution of the alleged environmental harms to the [department] through another provision of [the act]. . . . While the plaintiff . . . tactically avoids raising the issue of permit validity and instead attacks the direct consequences of the Millstone cooling system, she, in effect, asks the court to determine the very same issues that are currently being considered by the [department] under § 22a-430. As such, if this court were to adjudicate the plaintiff's allegations that the Millstone cooling system constitutes an unreasonable pollution of the environment, it would effectively require the court to make a determination that has been delegated to the ongoing [department] permitting process." On the issue of the plaintiff's alleged standing under § 22a-18 and § 22a-20, the court explained that neither statute conferred standing to bring an action in the Superior Court.[2]

Following the plaintiff's successful appeal on the issue of standing pursuant to § 22a-16 in a related case, *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 812, 970 A.2d 640 (2009), the plaintiff filed a motion for reargument with the trial court. On July 28, 2009, the trial court denied the plaintiff's motion, concluding that *Burton* was inapplicable. The court explained that the Supreme Court "delivered a narrow holding that related solely to . . . challenges

[2] In *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 801, 970 A.2d 640 (2009), our Supreme Court concluded that "§ 22a-20 does not create an independent cause of action."

where the plaintiff alleges both unreasonable environmental harm *and* that the agency permitting procedure is fatally flawed. . . . Whether the rights recognized under [the act] are adequately protected by the permitting process is simply not at issue in the present case." (Emphasis in original). This appeal followed.

I

On appeal, the plaintiff claims that the court erred in concluding that she lacked statutory standing under § 22a-16 to pursue her environmental claims against Dominion for its operation of Millstone. She argues that she sufficiently alleged that Dominion was engaging in unreasonable environmental pollution, impairment and destruction of natural resources and that the court, therefore, should not have dismissed her complaint. She further argues that the "pendency of administrative proceedings—the basis for the trial court's dismissal—is legally irrelevant."[3] We conclude that the court properly found that the plaintiff does not have standing to pursue this action.

Initially, we set forth our standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

---

[3] Although we do not agree with the plaintiff that the court based its decision to dismiss this action on the fact that there were ongoing administrative proceedings, we note that prior to oral argument in this appeal, we were notified by the parties that the department issued a final decision on the defendant's application for renewal of Millstone's national pollutant discharge elimination system permit for the withdrawal and discharge of waters from Niantic Bay into Long Island Sound associated with the operation of Millstone in August, 2010, and the new permit was issued on September 1, 2010.

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . . Traditionally, citizens seeking to protect the environment were required to show specific, personal aggrievement to attain standing to bring a legal action. . . . The [act] . . . however, waives the aggrievement requirement in two circumstances. First, any private party, including a municipality, without first having to establish aggrievement, may seek injunctive relief in court for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . . General Statutes § 22a-16. Second, any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. General Statutes § 22a-19 (a). . . .

"Under § 22a-16, standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state. . . . Although it is true, of course, that the plaintiff need not prove [his or her] case at this stage of the proceedings . . . the plaintiff nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment. . . . A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § 22a-16

. . . . Rather, it must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Commissioner of Environmental Protection,* supra, 291 Conn. 802–804.

"In ruling [on] whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . If . . . the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.,* 300 Conn. 542, 550, 23 A.3d 1176 (2011).

Our Supreme Court recently has explained that "to make a colorable claim sufficient to establish . . . standing under § 22a-16 . . . [a] complaint . . . [must] contain allegations of substantive violations giving rise to unreasonable pollution . . . that is, allegations of pollution *in excess of that permitted* under the regulatory scheme . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 557.

In her complaint, the plaintiff claimed that Millstone is withdrawing more than two billion gallons of water daily from Long Island Sound for cooling purposes and that this conduct constitutes an unreasonable destruction of a natural resource, because "billions of marine life, including Niantic River winter flounder larvae, are . . . ultimately destroyed . . . [and] the population of the Niantic River winter flounder has plummeted to dangerously low levels nearing collapse and extinction." A review of the plaintiff's allegations simply does not support an inference that the alleged harm caused

by Millstone activities exceeds that which is permissible under the applicable legislative or regulatory scheme. See id., 557–59; *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 141, 836 A.2d 414 (2003) ("the fact that conduct may be permitted under the relevant environmental statute does not preclude a claim that the activity causes unreasonable pollution under [the act], as when the alleged pollution exceeds the amount approved in the permit"). Indeed, the operation of the Millstone cooling system is governed by the permitting process set forth in § 22a-430, and the plaintiff does not claim in this action that Millstone is operating outside of its permit.

Pursuant to § 22a-430, Millstone is required to obtain a permit from the department in order to operate its cooling system. Millstone's permit renewal application was pending before the department from approximately 1997 until August, 2010. While the application was pending, Millstone continued to operate under its previously granted permit. The plaintiff was an intervenor in the permit renewal process where she raised several important environmental issues, including the issues she has raised in this action. At the time of her filing the present action in March, 2009, Millstone's permit renewal application still was pending before the department. In August, 2010, however, the permit application was granted by the department with many restrictions, and a new permit was issued on September 1, 2010. We also take judicial notice that the plaintiff has appealed from that decision. See generally *Papic* v. *Burke*, 113 Conn. App. 198, 221 n.13, 965 A.2d 633 (2009) (appellate courts have authority to take judicial notice of Superior Court files).

Clearly, "the department . . . has statutory and regulatory authority to issue water discharge permits, to determine the completeness of renewal applications and to pursue any one of several remedies if it concludes

that a discharge is creating unreasonable pollution or is occurring without a valid permit." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 133. In the present action, the plaintiff essentially is claiming that Millstone's water cooling process is environmentally harmful. That process, however, is governed by the regulatory scheme set forth in § 22a-430. The plaintiff does not claim that Millstone has gone beyond that which is permitted by the department's permit. See *Burton* v. *Dominion Nuclear Connecticut, Inc.*, supra, 300 Conn. 559–61. Although the plaintiff does not facially challenge the validity of the permit on environmental grounds, that is the essence of her claim. Accordingly, the court properly concluded that the plaintiff did not have standing to pursue her claim under the act. See *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 148 ("[w]here the alleged conduct involves a permitting claim . . . there is no standing pursuant to § 22a-16 to bring the claim directly in the Superior Court").

## II

The plaintiff next claims that the court improperly denied her the opportunity to present witnesses and to cross-examine the commissioner's affiant in order to prove that the plaintiff had standing to proceed with this action. We disagree.

It is well established in our case law that an evidentiary hearing *may* be appropriate with respect to a motion to dismiss. "[A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing

may be held in which evidence is taken." (Citation omitted.) *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.*, 281 Conn. 819, 826, 917 A.2d 959 (2007). "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Fairfax Properties, Inc.* v. *Lyons*, 72 Conn. App. 426, 432, 806 A.2d 535 (2002); see also *Lawton* v. *Weiner*, 91 Conn. App. 698, 705–706, 882 A.2d 151 (2005) (hearing required only when motion to dismiss raises genuine issue of material fact).

As explained by the trial court: "On March 23, 2009, the plaintiff requested that she be allowed to present witness testimony from two [department] marine scientists that would rebut the defendants' arguments. The court ordered that the witnesses would be permitted to testify on April 2, 2009, but stated that the court would only permit testimony that was relevant to the issue of standing as raised in the defendants' motions to dismiss. On March 30, 2009, the plaintiff filed a memorandum in opposition to the defendants' motions to dismiss. On April 2, 2009, the defendants filed motions in limine to preclude the plaintiff's proposed witness testimony on the ground that her witnesses would be unable to present any testimony that would be relevant to the issue of standing and that any testimony the witnesses, as marine scientists, could credibly provide would address the merits of her case, and not the standing arguments raised in the defendants' motions to dismiss. At the scheduled hearing on April 2, 2009, the court advised the plaintiff of the recently filed defense motions to preclude [her] witness testimony and asked if the plaintiff would like a continuance so that she could respond to the defendants' motions to preclude [the] witness testimony. The plaintiff declined and

expressed that she wished to proceed and respond to the motions in open court. The court then asked the plaintiff to provide a proffer that would demonstrate that [the] witnesses she wished to present could address the issue of statutory standing under [the act]. After lengthy proffer and argument, the court found [that] the plaintiff's proffer was insufficient and precluded the witness testimony on the ground that the proposed witnesses could not provide any testimony that would be relevant to the issues of statutory standing raised in the defendants' motions to dismiss." We agree with the court.

As stated in part I of this opinion, the plaintiff alleges that Millstone's water cooling process is environmentally harmful. The water cooling process, however, is governed by the regulatory scheme set forth in § 22a-430 and the permit issued pursuant thereto by the department. The plaintiff's complaint does not allege that Millstone is acting outside of its permit.[4] Rather, it appears to allege, without specifically saying as much, that the permit should be invalidated because it is allowing environmentally harmful results, i.e., the destruction of the fish and their larvae. Such allegations, however, are insufficient to prove standing under the act. Accordingly, we agree with the court that the plaintiff could not prove standing in this case by the introduction of testimony, there being no disputed facts that would support the plaintiff's standing.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] When this action was commenced, the permit under which Millstone was allowed to operate its cooling system was a permit that was approved in 1992. During the permit application renewal process, the 1992 permit remained in effect. In September, 2010, the department issued a new permit. See footnote 3 of this opinion.